OLSON, Appellant, v. HARDWARE DEALERS MUTUAL FIRE INSURANCE COMPANY (now known as THE SENTRY INSURANCE COMPANY), Respondent.

*No. 50. Argued January 7, 1970.—Decided February 3, 1970.*
(Also reported in 173 N. W. 2d 599.)

570

For the appellant there was a brief and oral argument by *James C. McKenzie* of La Crosse.

For the respondent there was a brief by *Johns, Flaherty, Harman & Gillette,* and *Daniel T. Flaherty,* all of La Crosse, and oral argument by *Daniel T. Flaherty.*

CONNOR T. HANSEN, J. This case was previously before this court, *Olson v. Sentry Ins. Co.* (1968), 38 Wis. 2d 175, 156 N. W. 2d 429, and the facts are set forth more fully in that decision.

Defendant, which issued its automobile liability policy to plaintiff, takes the position that the policy was canceled for nonpayment of premiums, by notice of cancellation mailed May 3, 1966, and effective May 18, 1966. The plaintiff was involved in an accident, while operating a vehicle listed in his policy, on September 24, 1966. Plaintiff brought this action against defendant for damages for breach of the insurance contract. The trial court granted a directed verdict for defendant holding that the policy had been canceled by the mailing of a notice of cancellation. In support of its motion, defendant introduced into evidence a cancellation list. The list contained the name, address and policy number of the plaintiff, and included a metered postage stamp of the post office which acknowledged the mailing of the letter on the list. However, this court reversed the judgment and order and granted a new trial, holding that "[t]he proof of mailing procedure . . . is not sufficient to prove the contents of the mailing. . ." and that the evidence was susceptible to the inference that the list merely showed an intention on the part of defendant to include a cancellation notice in the letter.

On retrial, defendant introduced the testimony of Mrs. Karen Groholski, an employee in the data processing center of the defendant, on May 3, 1966, who testified that she processed the cancellation list and personally placed the notice of cancellation in the window envelope which was sent to the plaintiff.

This appeal arises primarily because of the interpretation given the prior decision of this court by plaintiff's counsel. Plaintiff argues that proof of mailing raises only a rebuttable presumption of fact which, in the absence of proof to the contrary, may be sufficient to prove receipt. The plaintiff contends an insured should be able to prove that he did not in fact receive any cancellation, or was not aware of the cancellation prior to the accident. However, in its prior decision, this court followed the majority rule with respect to interpreting this particular portion of the automobile liability policy holding that actual receipt of notice of cancellation is not necessary.

"Plaintiff denies receipt of the cancellation notice allegedly mailed on May 3, 1966. He attempts to cast doubt upon the fact of mailing by calling attention to the fact that no mention of cancellation appeared on the account summary introduced into evidence, nor did the insurance agent with whom plaintiff customarily dealt, J. I. Murphy, notify the plaintiff of the cancellation as was allegedly his custom.

"According to the cancellation provision of the insurance policy, the insured must be notified of the cancellation for it to be effective. *Proof of mailing, however, is conclusive of the notice issue.* That the fact of cancellation did not appear on the account summary and that Murphy had not notified the plaintiff of the cancellation do not rebut the testimony that mailing in fact occurred, nor does the denial of receipt aid the plaintiff's case, for proof of mailing does more than merely raise a presumption of receipt, the denial of which creates a jury issue, as would be the case absent the cancellation provision. *See,* for example, *Reeves v. Midland Casualty Co.* (1920), 170 Wis. 370, 174 N. W. 475, 174 N. W. 959." *Olson v. Sentry Ins. Co., supra,* pages 179, 180. (Emphasis added.)

"There is a great deal of confusion as to whether actual receipt of notice is required, or whether mailing alone is sufficient proof of notice. And, as to which of these requirements constitutes the majority rule. Much

of this confusion can be attributed to the following situations wherein the court may require the actual receipt of notice of cancellation, and yet not prevent the parties from making an agreement that mailing alone is sufficient proof of notice:

"(a) The policy provision does not expressly provide that mailing is sufficient proof of notice.

"(b) The insurer did not strictly comply with the policy provision.

"(c) The policy provision conflicts with the applicable state statute. . . .

"Aside from the above three situations, it is probably the 'majority rule' that where the policy provision authorizes mailing as sufficient proof of notice, the agreement of the parties in the policy is valid and actual receipt of notice is not required." Ghiardi, *Recent Developments in the Cancellation, Renewal and Rescission of Automobile Insurance Policies*, 51 Marquette Law Review (1967–1968), pp. 219, 234.

In addition, this court has held that this particular clause in the automobile liability policy [1] is not contrary to public policy.[2]

---

[1] The policy in this case includes the following language: ". . . This policy may be canceled by the company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing."

[2] "A cancellation condition providing that the policy may be canceled by mailing of a written notice to the named insured is neither unjust nor unreasonable, but it does contain such elements of possible disaster to the insured that proof of mailing of such notice must be clear and specific. When an insurer pleads the defense of cancellation of the policy it has the burden of establishing the facts which relieve it of liability; it has the burden of proving a strict compliance with the cancellation provision, including the mailing of the notice.

"When a policy stipulates that the insurer 'may cancel this policy by giving the insured five days written notice,' such a provision

"... As far as we have discovered from a search of the authorities, the insurer has been held to a strict compliance with the policy terms of cancellation and a slight deviation invalidates the notice sent and the attempted cancellation. But we do not find from such authorities that when the policy terms are as they are here, and there is no conflicting statute, and the notice and its mailing complies with the policy provisions, the courts have refused to recognize the cancellation. In the absence of statutory declarations there appears to be no public policy removing the right to cancel in this manner from the field of contract. By sec. 204.30, Stats., the legislature has already modified the freedom of parties to contract in respect to liability insurance policies. These statutory restrictions are declarations of public policy and they do not include the principle now advocated by appellants. The provision in question is common in liability policies. We refrain from entering the legislative field to declare it void." *Putman v. Deinhamer* (1955), 270 Wis. 157, 161, 70 N. W. 2d 652.

In his brief, counsel also states "that the court's majority opinion in this case did not enter into any finding of fact that an envelope had been mailed May 3, 1966, but only some proof thereof had been admitted into evidence." However, this court was unanimous in the opinion that a letter had in fact been sent by defendant on May 3, 1966, to plaintiff.

"... On the face of the cancellation list for May 3, 1966, was a metered postage stamp that was canceled. The list contained the name, address, and automobile policy number of the plaintiff, Charles Olson. We think

is clearly distinguishable from those empowering the insurer to cancel the policy 'by mailing written notice to the insured's address designated in the policy.' Where the requirement is the 'mailing' of the written notice, the generally accepted rule is that the actual receipt by the insured of such notice is not a condition precedent to cancellation. The mere mailing of the notice is sufficient to effect cancellation. When the requirement is 'by giving written notice to the insured,' it is the settled rule that actual receipt of the written notice of cancellation is a condition precedent to cancellation." Long, *Law of Liability Insurance*, Cancellation, sec. 15.03.

this is sufficient to establish that a piece of mail was forwarded to him, the list functioning similarly to a receipt." *Olson v. Sentry Ins. Co., supra,* page 181.

Therefore, on remand, there was no issue as to *receipt* of the cancellation notice; and the only question was whether the letter that was mailed contained a cancellation notice. The answer to this question was provided by the testimony of Mrs. Groholski who testified that she had put such a notice in the letter sent to the plaintiff on May 3, 1966.

Mr. J. I. Murphy was defendant's agent who sold the policy to plaintiff. Murphy testified that he did not receive any notice of cancellation of plaintiff's policy and plaintiff now contends this goes far to establish that no notice was sent on May 3, 1966. However, this evidence relates to receipt, and whether or not either plaintiff or Murphy received notice of cancellation was not the issue in this case. In addition, this court previously held that whether or not Murphy knew of the cancellation was not of any import. It follows that whether or not Murphy knew of the cancellation is also of no consequence.

Plaintiff also argues the trial court committed error by not allowing in evidence certain testimony and exhibits during the second trial and contends such evidence was sufficient to warrant a jury determination.

Plaintiff tried to establish, through the testimony of Murphy, that (1) it was not the "proper custom and practice" of defendant to send both an installment due notice and a notice of cancellation in one envelope, as testified to by Mrs. Groholski; and (2) there was usually a thirty-day period from the time that a cancellation was initiated until the policy was terminated, rather than the fifteen days as in this case. However, Murphy's knowledge of the manner in which policies are canceled by defendant is of little relevance. The issue was whether the letter mailed to plaintiff had a notice of cancellation

in it, and the general practice of mailing cancellations, as known to a field agent for an insurance company, has small impact on this question.

Plaintiff sought to introduce exhibits based on the cancellation of a separate insurance policy one year after the policy in question was canceled. The rationale of these exhibits was explained on appeal:

".  .  . Since Charles Olson had no written evidence concerning the practices and procedures of the insurance company in mailing the proper cancellations on the first trial of this matter held March 27, 1967, Mr. Olson decided that the only way he would be able to get hold of the written evidence connected therewith, was to purposely allow his policy to become in arrears."

Again, the relevancy of these exhibits is highly questionable, not only because they include procedures subsequent to the practices involved in this case, but also because they deal with a "Workmens Compensation & Combination" policy, and not an automobile liability policy.

Plaintiff attempted to introduce canceled checks he received back from defendant covering the time period from January 5, 1966, through August 5, 1966, "[I]n proof of Mr. Olson's attempting to pay whatever insurance bills he knew he was obligated to pay." However, this evidence deals not with mailing, but with receipt which was not an issue in the retrial of this case.

Plaintiff offered an exhibit which was a handwritten notice of cancellation sent to the Commercial Credit Company, with whom plaintiff had a mortgage on his car. The cancellation was dated June 16, 1966, with an effective date of cancellation of June 29, 1966, and originated in Madison; whereas, the cancellation sent to plaintiff originated in Stevens Point, was printed, and the effective date was May 18, 1966. Plaintiff claims this shows that no notice of cancellation was sent to plaintiff on May 3, 1966, and should have been admitted

as evidence. Plaintiff also contends that prior to the accident he was not aware of any proceedings to notify the holder of his car mortgage that his insurance had been canceled.

Whether or not plaintiff had knowledge of the notice sent to his mortgage company has no bearing on the issue of whether a notice of cancellation was in fact mailed to him. In addition, the variance between the notice of cancellation sent to the mortgagor and the one sent to plaintiff does not necessarily refute the prior holding of this court that a letter was in fact sent to plaintiff and the testimony of Mrs. Groholski that she put a cancellation notice in that letter.

All of the above items of proof sought to be introduced by plaintiff were held inadmissible and the question on appeal is whether there was an abuse of discretion by the trial court. In dealing with evidence of slight probative value, the trial court is given wide discretion. *Lisowski v. Chenenoff* (1968), 37 Wis. 2d 610, 626, 155 N. W. 2d 619; American Law Institute, *Model Code of Evidence,* p. 180, Rule 303.[3] The evidence put forth by plaintiff had little impact in relation to the one and only issue in the retrial of this case—the contents of the May 3, 1966, letter mailed by defendants. No substantive reasons have been given why this court should now rule there was an abuse of discretion by the trial court in its rulings with respect to plaintiff's proffered evidence.

---

[3] Rule 303 of the Model Code of Evidence is as follows:

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

"(a) necessitate undue consumption of time, or

"(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or

"(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered.

"(2) All Rules stating evidence to be admissible are subject to this Rule unless the contrary is expressly stated."

In addition to the other evidence already discussed, plaintiff sought to have an independent computer expert testify that in his opinion no cancellation was in fact sent to plaintiff on May 3, 1966. This witness had never worked in an insurance company billing section, nor had any contact with one. In view of this, there was no abuse of discretion by the trial court in rejecting his opinion concerning the mailing of a cancellation notice by defendant. *Wojciuk v. United States Rubber Co.* (1963), 19 Wis. 2d 224, 120 N. W. 2d 47, 121 N. W. 2d 294, 122 N. W. 2d 737.

Plaintiff further claims it was error to admit into evidence, at the original trial, two of defendant's exhibits. One was a sample copy of an installment due notice and the other a sample copy of a cancellation notice. Both were prepared solely for the original trial and are not carbon or mechanically reproduced copies of what was sent to the plaintiff. No issue was raised on the prior appeal as to the admissibility of these exhibits as evidence.

"Also, this court held in *Lutien v. Kewaunee* (1913), 151 Wis. 607, 609, 139 N. W. 312:

" 'All mere questions of law which were involved in the case before, whether thought of by counsel and argued or not, were foreclosed by the decision. A judgment is just as conclusive as to minor questions which would have turned the result either way according to their determination, as upon the major or ultimate proposition, whether more than inferentially presented or not.'

"In *State ex rel. Littig v. Superior Court* (1939), 231 Wis. 58, 62, 285 N. W. 419, the court quoted *Monahan v. Fairbanks-Morse Mfg. Co.* (1912), 150 Wis. 512, 516, 137 N. W. 748, saying:

" 'A litigant "is concluded by the mandate of this court as to all matters actually presented or which might consistently with legal rules have been presented to this

court upon appeal." ' " *Cathey v. Industrial Comm.* (1964), 25 Wis. 2d 184, 188, 130 N. W. 2d 777.

On the retrial of this case, the two exhibits were referred to by Mrs. Groholski in demonstrating the manner in which she placed the installment due and the cancellation notices in the window envelopes. She testified that this was the procedure she followed when preparing the notice of cancellation which was sent to the plaintiff. There was no reference to the contents of the exhibits, only that they were a sample of the type of documents sent to the plaintiff. As such, they were an aid to understanding the testimony of Mrs. Groholski, and not of any evidentiary weight. However, there is no indication in the record that the plaintiff was prejudiced by the admission of these two exhibits.

*By the Court.*—Judgment affirmed.